IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY CULVER,<br><br>        Plaintiff,<br><br>   v.<br><br>ASBESTOS DEFENDANTS (BP),<br><br>        Defendants.<br>_____ / | No. C 10-03484 SI<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND AS TO DEFENDANT U.S. STEEL; SEVERING CLAIMS AGAINST U.S. STEEL; AND REMANDING REMAINING CLAIMS TO STATE COURT** |

On November 4, 2010, the Court heard argument on plaintiff's motion to remand to state court. Having considered the arguments of counsel and the papers submitted, the Court hereby DENIES plaintiff's motion to remand as to removing defendant U.S. Steel. Since both parties agreed to sever the claims against defendant from the remainder of this case at the hearing, the Court also SEVERS the claims against defendant U.S. Steel from the rest of the case, and the balance of the case is REMANDED to the San Francisco County Superior Court.

**BACKGROUND**

Plaintiff Timothy Culver, heir and successor-in-interest to decedent Robert Culver, brings this suit for wrongful death as a result of decedent's exposure to asbestos. *See* Notice of Removal, Ex. B (First Am. Compl.). Plaintiff's first amended complaint names 36 defendants and lists over 25 alleged occurrences of exposure to asbestos. *Id.* Plaintiff claims that some of these exposures occurred when decedent served aboard the *Sea Blenny* in 1947, and when he served aboard the *Sailor's Splice* in 1951. *Id.* at 12-13. It is undisputed that the *Sea Blenny* was built by Western Pipe & Steel ("Western") in 1945, and the *Sailor's Splice* was built by Consolidated Steel Corporation ("Consolidated") in 1945.

Decl. of David F. Beach, Ex. F, G. It is also undisputed that defendant United States Steel Corporation ("U.S. Steel") is the successor-in-interest to Western and Consolidated, as both companies were eventually acquired by U.S. Steel. Beach Decl., Ex. E (Pl.'s Response to Def.'s Interrogatories, at 2), F.

According to U.S. Steel, both *Sea Blenny*, a C-3 model ship, and *Sailor's Splice*, a C-1 model ship, were built for military use. Beach Decl., Ex. F, G. During World War II, the Maritime Commission ("Commission") designed and developed such C-1 and C-3 ships as part of the government's effort to construct numerous military ships in a short period of time. Beach Decl., Ex. H., at 1460-64. The Commission allegedly wrote the specifications for these ships, which included the use of materials that contained asbestos. *Id.* at 1463-64, 1466, 1483, 1487-88. The Commission also allegedly put inspectors in the shipyards to ensure that the ships were constructed pursuant to their plans and specifications. *Id.* at 1464.

On July 15, 2008, decedent filed an action for personal injury and loss of consortium caused by exposure to asbestos in the San Francisco County Superior Court, to which U.S. Steel was not a party. *See* Notice of Removal, Ex. A (Compl.). Decedent passed away on September 7, 2009, while that action was pending. *Id.*, Ex. B (First Am. Compl.). Timothy Culver was substituted as the plaintiff, and on January 8, 2010, the complaint was amended to state a claim for wrongful death. *Id.* U.S. Steel was served with the first amended complaint on January 14, 2010. *Id.*; Beach Decl., Ex. C.[1] U.S. Steel filed its notice of removal on August 9, 2010, claiming that this Court has "federal officer" removal jurisdiction pursuant to 28 U.S.C. § 1442(a)(1).

Presently before the Court is plaintiff's motion to remand to the superior court due to lack of subject matter jurisdiction.

**LEGAL STANDARD**

A motion to remand is the proper procedure for challenging an opposing party's removal.

---

[1] U.S. Steel claims it only became aware of the basis of the claim against it through responses to special interrogatories served on July 23, 2010. *See* Notice of Removal, Ex. B (First Am. Compl. ¶¶ 4-5), E.

2

Remand to state court may be ordered either for lack of subject matter jurisdiction or for any defect in removal procedure. *See* 28 U.S.C. § 1447(c). The court may remand *sua sponte* or upon the motion of a party. A defendant who invokes the federal court's removal jurisdiction has the burden of establishing federal jurisdiction. *See Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)).

In addition to the more common federal question and diversity grounds for removal, pursuant to 28 U.S.C. § 1442(a), "[f]ederal officers, and their agents, may remove cases based on acts performed under color of their federal office if they assert a colorable federal defense." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006) (citing 28 U.S.C. § 1442(a); *Mesa v. California*, 489 U.S. 121, 129 (1989)). "A party seeking removal under section 1442 must demonstrate that (a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims, and (c) it can assert a 'colorable federal defense.'" *Id.* (citing *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999)).

Unlike the general removal statutes, which "are to be strictly construed, and any doubts as to the right of removal must be resolved in favor of remanding to state court," *id.* at 1252 (citation omitted), "the Supreme Court has mandated a generous interpretation of the federal officer removal statute," *id.* (citing *Colorado v. Symes*, 286 U.S. 510, 517 (1932)). There is, according to the Ninth Circuit, "a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal." *Id.* Also unlike the general removal statues, under section 1442, not all defendants need concede to removal. *See Eli Valley Mines, Inc. v. Hartford Accident & Indem. Co.*, 644 F.2d 1310, 1315 (9th Cir. 1981) ("Thus, § 1442 represents an exception to the general rule (under §§ 1441 and 1446) that all defendants must join in the removal petition."). One defendant in a multi-defendant case can unilaterally remove the entire case to federal court if it meets the requirements of section 1442. *See id.*

## DISCUSSION

Plaintiff argues that U.S. Steel's removal was substantively deficient because U.S. Steel has not established that it meets the requirements of § 1442(a). Plaintiff also argues that the Court should

3

remand this case because U.S. Steel removed the case to federal court as a delaying tactic.

## I.  Evidentiary Objection

In opposing plaintiff's motion to remand, U.S. Steel offers as evidence the testimony of Charles Cushing in the unrelated case *Franklin v. Owens Corning*, purporting to show why this Court has "federal officer" jurisdiction. Beach Decl., Ex. H. In his reply, plaintiff moved to strike this testimony, arguing that Cushing's testimony is inadmissible hearsay that does not fall under the hearsay exception in Federal Rule of Evidence 804(b)(1).[2] On November 2, 2010, the Court issued an order granting U.S. Steel leave to respond to plaintiff's evidentiary objection. In its response, U.S. Steel conceded that neither plaintiff nor decedent were parties to *Franklin*. However, U.S. Steel argued that Franklin was a predecessor in interest to plaintiff because Franklin had a similar motive and opportunity to cross-examine Cushing.

Rule 804(b)(1) states:

> The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> (1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

In the context of a civil action, this rule requires that (1) the declarant be unavailable; (2) the testimony be given by a witness at another hearing of the same or a different proceeding; and (3) the testimony be offered against a party or a "predecessor in interest" of a party that had an opportunity and

---

[2] Plaintiff also argues that the Court should not consider Cushing's testimony because U.S. Steel may not present new evidence to the Court in its opposition to the motion to remand. In support of this argument, plaintiff cites *Laughlin v. Kmart Corp.*, 50 F.3d 871 (10th Cir. 1995), claiming it stands for the proposition that "[i]f the notice of removal is devoid of facts necessary to support removal, the court may remand despite presentation of new facts in opposition to a remand motion." Pl. Reply, at 3. This argument, however, mischaracterizes *Laughlin*. *Laughlin* stands for the proposition that when a diversity case has been removed to federal court under 29 U.S.C. § 1441, the defendant must establish the amount in controversy either on the face of the petition or in the removal notice. *Laughlin*, 50 F.3d at 873. It is inapplicable to the present case.

4

similar motive to develop the testimony by direct, cross, or redirect examination.

### A. Availability

A declarant is unavailable when he "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means." Fed. R. Evid. 804(a)(5). At the November 4 hearing, U.S. Steel represented that Cushing resides in New York. Plaintiff did not challenge that representation. As Cushing resides in New York, he is outside of the Court's subpoena power. *See* Fed. R. Civ. Pro. 45(c)(3)(A)(ii); *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1019 (9th Cir. 2004). Because U.S. Steel could not procure Cushing's attendance by process, he is unavailable.

### B. Testimony of a Witness at a Hearing

The parties do not dispute that the transcript U.S. Steel wishes admitted is a transcript of Cushing's in court testimony in *Franklin*.

### C. Predecessor in Interest

Plaintiff argues that neither he nor decedent was a party to *Franklin*. U.S. Steel argues that the relevant question is whether either party examining Cushing had a similar motive to examine him as plaintiff would have here, and whether that party had the opportunity to examine him.

The Ninth Circuit has not ruled on whether any party with a similar motive and opportunity to cross-examine the declarant can be considered a predecessor in interest under Rule 804(b)(1) even if there is no privity between the parties. *See Nelson v. Fibreboad Corp.*, 912 F.2d 469 (Table), 1990 WL 125341, *1 (9th Cir. 1990) (explaining that the court did not need to take a position on this question).

The Committee Notes to the 1974 amendment make clear that the term "predecessor in interest" adds at least some requirement to, rather than merely describes, a party that had an opportunity and similar motive to develop the testimony:

> Rule 804(b)(1) as submitted by the Court allowed prior testimony of an unavailable witness to be admissible if the party against whom it is offered or a person "with motive

5

> and interest similar" to his had an opportunity to examine the witness. The Committee considered that it is generally unfair to impose upon the party against whom the hearsay evidence is being offered responsibility for the manner in which the witness was previously handled by another party. The sole exception to this, in the Committee's view, is when a party's predecessor in interest in a civil action or proceeding had an opportunity and similar motive to examine the witness. The Committee amended the Rule to reflect these policy determinations.

H. Rep. No. 93-1597 (House Committee on the Judiciary 1974); *see also* S. Rep. No. 93-1277 (Senate Committee on the Judiciary 1974) ("[W]e accept the House amendment.").

The Third, Fourth, and Sixth Circuits have all taken the position that the term "predecessor in interest" actually adds quite little to the rest of the requirements of the rule. To reach this conclusion, the Third and Sixth Circuits isolated a sentence in the Senate Report that indicates that the Senate accepted the House amendment—adding "predecessor in interest" to the rule proposed by the Supreme Court—because the "difference between the two versions is not great." S. Rep. No. 93-1277 (Senate Committee on the Judiciary 1974). As these courts have explained,

> While we do not endorse an extravagant interpretation of who or what constitutes a "predecessor in interest," we prefer one that is realistically generous over one that is formalistically grudging. We believe that what has been described as "the practical and expedient view" expresses the congressional intention: "if it appears that in the former suit a party having a like motive to cross-examine about the same matters as the present party would have, was accorded an adequate opportunity for such examination, the testimony may be received against the present party." Under these circumstances, the previous party having like motive to develop the testimony about the same material facts is, in the final analysis, a predecessor in interest to the present party.

*Clay v. Johns-Manville Sales Corp.*, 722 F.2d 1289, 1295 (6th Cir. 1983) (quoting *Lloyd v. Am. Export Lines, Inc.*, 580 F.2d 1179, 1187 (3d Cir. 1978)). It does not appear that any circuit court has expressly disavowed this interpretation of Rule 804. Accordingly, the Court adopts this interpretation.

The Court must now determine whether "the previous party [had] like motive to develop the testimony about the same material facts." *See id.*; *Lloyd*, 580 F.2d at 1187. At the November 4 hearing, plaintiff argued that Franklin did not have a similar motive to develop the testimony because plaintiff would have chosen to object to specific parts of Cushing's testimony had he been a party to that case.

Franklin had a similar motive to develop Cushing's testimony. Like the present case, *Franklin* was a civil case in which the defendant was charged with contributing to the plaintiff's mesothelioma.

6

During Cushing's testimony, Franklin had a motive to prevent the defendant from shifting responsibility for using asbestos to the government. Franklin was also represented by counsel, who had an opportunity to cross-examine Cushing at trial. That plaintiff would have made the strategic decision to object to certain parts of Cushing's testimony that Franklin did not, does not mean that Franklin did not share a motive similar to plaintiff's. Franklin was a predecessor in interest to plaintiff.

Cushing's testimony is admissible and can be considered when determining whether this Court has "federal officer" jurisdiction.

## II.     Removal Is Proper Because U.S. Steel Has Satisfied the *Mesa* Factors

In order to obtain removal under § 1442(a)(1), U.S. Steel must (1) demonstrate that it is a person within the meaning of the statute, (2) demonstrate that it acted under the direction of a federal officer, (3) demonstrate a causal nexus between plaintiff's claims and acts it performed under color of federal office, and (4) raise a colorable federal defense to plaintiff's claims. *Mesa v. California*, 489 U.S. 121, 124-25, 134-35 (1989).

### A.     U.S. Steel Is a Person Within the Meaning of the Statute

U.S. Steel must demonstrate that it qualifies as a person within the meaning of the statute in order to seek removal pursuant to it. A "purely legal person such as a corporation could be engaged in activities that amount to the implementation of a federal policy under the direction of a government officer such that state court suits against those corporations could disrupt the execution of federal law." *Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N.D. Cal. 1992) (citation omitted). U.S. Steel is a corporation and is therefore a person within the meaning of 28 U.S.C. § 1442(a)(1). *See id.*

### B.     U.S. Steel Acted Under the Direction of a Federal Officer

U.S. Steel must also show that its actions were sufficiently controlled by a federal officer that U.S. Steel's liability arising from such actions needs to be adjudicated in federal court. If U.S. Steel "establishes only that the relevant acts occurred under the general auspices of a federal officer, such as being a participant in a regulated industry, they are not entitled to § 1442(a)(1) removal." *Id.* (citation

omitted). Instead, U.S. Steel must show that the federal government had "direct and detailed control" over it. *Id.* In *Fung*, direct and detailed control was shown where the federal government contracted with the defendant to build submarines, monitored defendant's performance, ensured complete conformity by defendant with design specifications, and "required the defendant to construct and repair the vessels in accordance with the applicable and approved specifications incorporated into the contracts." *Id.* at 572-73.

Cushing's testimony is sufficient to demonstrate that the Maritime Commission had direct and detailed control over the way U.S. Steel's predecessors, Consolidated and Western, manufactured the *Sea Blenny* and *Sailor's Splice*. The Commission designed and developed C-1 and C-3 ships. Beach Decl., Ex. H., at 1460-64. The Commission wrote the specifications for these ships, which specified that Consolidated and Western use materials that contained asbestos. *Id.* at 1463-64, 1466, 1483, 1487-88. In addition, the Commission placed government inspectors in the shipyards to ensure that the ships conformed to the Commission's plans and specifications. *Id.* at 1464.

Other courts have held that there was direct and detailed control over military contractors in similar circumstances. *See, e.g.*, *Redman v. A.W. Chesterton Co.*, No. 08-3013, 2008 WL 4447729, at *4 (N.D. Cal. Sept. 30, 2008) (requisite control found over contractors in marine distilling plants manufactured for sale to the United States Navy); *Oberstar v. CBS Corp.*, No. CV 08-118 PA, 2008 U.S. Dist. LEXIS 14023, at *12 (C.D. Cal. Feb. 11, 2008) (requisite control found over contractors who manufactured equipment used on Navy ships). Cushing's testimony is sufficient to meet U.S. Steel's burden of demonstrating direct and detailed control at this stage in the proceedings.

**C.    There Is a Causal Nexus Between Defendant's Acts and Plaintiff's Claims**

U.S. Steel must show that there is a causal nexus between U.S. Steel's acts under color of federal office and plaintiff's claims. Plaintiff's claims arise from plaintiff's service aboard the ships *Sea Blenny* and *Sailor's Splice* in 1947 and 1951, respectively. As explained above, U.S. Steel has provided sufficient evidence that it acted under the direct and detailed control of the Maritime Commission when it manufactured these ships for the military. Therefore, there is a sufficient causal nexus between U.S. Steel's actions pursuant to military control and plaintiff's claims.

### D. U.S. Steel Raises a Colorable Federal Defense to Plaintiff's Claims

Finally, U.S. Steel must show that it has a colorable federal defense. *See Mesa*, 489 U.S. at 128. Pursuant to the *Durham* policy favoring removal for federal officers, a defendant does not need to show a valid or likely successful federal defense, but merely a colorable one. *Durham*, 445 F.3d at 1252.

In this case, U.S. Steel invokes the military contractor defense, which shields military contractors from state tort law liability for defects in military equipment supplied to the United States when: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle v. United Tech. Corp.*, 487 U.S. 500, 512 (1988).

As discussed above, Cushing's testimony is evidence that the Commission wrote the specifications for C-1 and C-3 ships, and ensured that Consolidated and Western complied with these specifications. Beach Decl., Ex. H., at 1460-64, 1466, 1483, 1487-88. Furthermore, U.S. Steel has presented evidence that the dangers of asbestos were already known to the United States, and therefore it was not necessary for U.S. Steel to warn the government about these dangers. To show this, U.S. Steel relies on "Minimum Requirements for Safety and Industrial Health in Contract Shipyards," a pamphlet published by the Navy and Maritime Commission in 1943. Beach Decl., Ex. I. This pamphlet identifies asbestos as a potential health hazard and recommends that special safety precautions be taken when working with asbestos. *Id.* §§ 11.1, 13.7.

U.S. Steel made a sufficient showing that it is a person that acted under the direction of a federal officer, there is a causal nexus between its actions and plaintiff's claims, and it can assert a colorable federal defense. Therefore, "federal officer" jurisdiction is proper under § 1442(a)(1).

## III. Removal as a Delaying Tactic

Plaintiff also argues that the Court should remand this case because U.S. Steel removed the case to federal court as a delaying tactic, prejudicing plaintiff and wasting judicial resources. Plaintiff claims that U.S. Steel is seeking "to avail itself of the glacial pace that is the hallmark of federal asbestos multi-district litigation, the 'black hole' that is the federal asbestos MDL." Pl. Mot. to Remand, at 5.

Plaintiff's argument as to motive is unsupported and is rejected.

**CONCLUSION**

The Court hereby DENIES plaintiff's motion to remand (Docket No. 10). The Court also severs the claims against U.S. Steel from the rest of the case, and the balance of the case is REMANDED to San Francisco County Superior Court.

**IT IS SO ORDERED.**

Dated: November 12, 2010

SUSAN ILLSTON
United States District Judge